# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARLIN TRAVIS,<br><br>                              Plaintiff,<br><br>v.<br><br>ENGELHART CTP (US), LLC, et al.,<br><br>                              Defendants. | Case No.: 16-CV-1728 W (JMA)<br><br>**ORDER DENYING DEFENDANTS' MOTION TO COMPEL ARBITRATION [DOC. 35]** |

Pending before the Court is a motion to compel arbitration filed by Defendants Engelhart CTP (US) LLC, Engelhart CTP Trading (US) LLC,[1] and BTG Pactual NY Corporation. [Doc. 35.] The Court decides the matter on the papers submitted and without oral argument pursuant to Civil Local Rule 7.1(d)(1). For the reasons that follow, the Court **DENIES** Defendants' motion.

//
//
//

---

[1] According to Defendants' answer, Engelhart CTP Trading (US) LLC was previously named BTG Pactual Commodities Trading (US) LLC, and Engelhart CTP (US) LLC was previously named BTG Pactual Commodities (US) LLC. (*See Defs.' Answer* [Doc. 4] 2 n.1–n.2.)

1

## I. BACKGROUND

In July of 2013, Defendant BTG Pactual Commodities (US) LLC[2] ("BTG") hired Plaintiff. (*Employment Agreement; Loan Agreement* [Doc. 11-2 Exhs. A, B].) Along with his offer of employment, BTG extended to Plaintiff two loans, the principal of which totaled $750,000. (*Loan Agreement* [Doc. 11-2 Exh. B].) BTG addressed the agreements to Plaintiff's home in Temecula. (*Id.*) Plaintiff signed the contracts there, scanned the signed pages and emailed them back to BTG. (*Employment Agreement; Loan Agreement* [Doc. 11-2 Exhs. A, B]; *Travis Decl.* [Doc. 23-1] ¶ 11.)

The Loan Agreement provided:

> **In the event [BTG] terminates your employment or you resign your employment . . ., any outstanding amount of the loans will then become immediately payable to [BTG] and must be paid within 30 days of the earlier of you giving notice of your resignation or your employment with [BTG] terminating . . . .**
>
> **However, if [BTG] terminates your employment because your position is being eliminated or [BTG] is exiting the Commodities business (and not selling it), then under these two scenarios only will you not have to repay any outstanding amount of the Loans.**

(*Loan Agreement* [Doc. 11-2, Exh. B] (formatting altered from original).)

Plaintiff brought this action on June 6, 2016 in California Superior Court, alleging that BTG breached his employment agreement by eliminating his position without cause in April of 2016, and seeking declaratory relief to the effect that he does not have to pay back the loans. (*Compl.* [Doc. 1 Exh. A].) Defendants removed the case to this Court on July 5, 2016. (*Notice of Removal* [Doc. 1.].) They filed an Answer and Counterclaim on July 12, 2016, denying Plaintiff's allegation that he was terminated and seeking repayment of the loans on the basis that he resigned his employment. [Doc. 4.]

---

[2] The Loan Agreement states that Plaintiff began working for BTG Pactual NY Corporation. (*Loan Agreement* [Doc. 11, Exh. B].) This would appear to be an error. Both the Answer and the Employment Agreement state the Plaintiff worked for Plaintiff worked for BTG Pactual Commodities (US) LLC. (*Answer* [Doc. 4] ¶ 11; *Employment Agreement* [Doc. 11-2, Exh. B] 1.)

On October 5, 2016, Defendants moved to transfer venue to the District of Connecticut. [Doc. 11.] Plaintiff opposed. [Doc. 18.] The Court denied the motion on January 19, 2017. [Doc. 26.]

Nearly nine months later, on September 22, 2017, Defendants filed the instant motion to compel arbitration. (*Defs.' Mot.* [Doc. 35].) Plaintiff opposes. (*Pl.'s Opp'n* [Doc. 38].)

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides:

> **A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.**

9 U.S.C. § 2. "A party seeking to compel arbitration has the burden under the FAA to show (1) the existence of a valid, written agreement to arbitrate; and, if it exists, (2) that the agreement to arbitrate encompasses the dispute at issue." Ashbey v. Archstone Prop. Mgmt., Inc., 785 F.3d 1320, 1323 (9th Cir. 2015).

"The 'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'" AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 344 (2011) (quoting Volt Information Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 478 (1989)). "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24–25 (1983).

When ruling on a motion to compel arbitration, the court applies a standard similar to that found in Fed. R. Civ. P. 56. See Concat LP v. Unilever, PLC, 350 F. Supp. 2d 796, 804 (N.D. Cal. 2004). "'Before a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court, there should be an express, unequivocal agreement to that effect. If there is doubt as to whether such an agreement exists, the matter, upon a

3

proper and timely demand, should be submitted to a jury.' " Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., 925 F.2d 1136, 1141 (9th Cir. 1991) (quoting Par–Knit Mills, Inc. v. Stockbridge Fabrics Co., 636 F.2d 51, 54 (3d Cir. 1980)).

### III. DISCUSSION

#### A. The Unilateral Arbitration Clause is Unconscionable and Unenforceable.

Defendants seek to enforce the unilateral arbitration clause in Plaintiff's employment agreement. (*Defs.' Mot.* [Doc. 35-1] 5:7–14.) Plaintiff contends that the clause is unenforceable per California law, or alternatively that Defendants have waived enforcement of the clause by vigorously litigating the case in federal court for the past seventeen months—including the highly contentious prior motion to transfer venue to Connecticut.[3] (*See Pl.'s Opp'n* [Doc. 38].) As analyzed below, the clause in question is one-sided—it allows only one party to force arbitration, at its sole discretion. This makes it unconscionable and unenforceable per California law. The Court need not and does not reach the waiver argument.

//
//
//
//
//

---

[3] In litigating the prior motion, Plaintiff maintained that Defendants sought to transfer venue away from this district as part of a strategy to avoid the application of California's law of unconscionability as to unilateral arbitration clauses. (*Pl.'s Opp'n to Mot. to Transfer Venue* [Doc. 23] 1:15–18; 10:3–11:6.)

At the time, Defendants replied by contending, *inter alia*, that "Plaintiff's argument regarding the arbitration clause is a red herring[,]" that "Plaintiff's claim requesting that the clause be declared unenforceable is a collateral issue in this case[,]" and that "[k]eeping the case in San Diego based on some ancillary threat of arbitration would be the tail wagging the dog[.]" (*Defs.' Reply re: Mot. to Transfer Venue* [Doc. 24] 8:25–9:20.)

4

> (a) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.
>
> (b) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose, and effect to aid the court in making the determination.

Cal. Civ. Code § 1670.5. "Because unconscionability is a reason for refusing to enforce contracts generally, it is also a valid reason for refusing to enforce an arbitration agreement . . . ." Armendariz v. Foundation Health Psychcare Services, 24 Cal. 4th 83, 114 (2000); see 9 U.S.C. § 2. " '[U]nconscionability has both a procedural and a substantive element,' the former focusing on 'oppression' or 'surprise' due to unequal bargaining power, the latter on 'overly harsh' or 'one-sided' results." Id. (quoting A & M Produce Co. v. FMC Corp., 135 Cal. App. 3d 473, 486–87 (1982) (internal quotations omitted)). "The party resisting arbitration bears the burden of proving unconscionability." Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC, 55 Cal. 4th 223, 247 (2012).

" 'The prevailing view is that [procedural and substantive unconscionability] must both be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability.' " Armendariz, 24 Cal. 4th at 114 (quoting Stirlen v. Supercuts, 51 Cal. App. 4th 1519, 1533 (1997)) "But they need not be present in the same degree." Id. " 'Essentially a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation, that creates the terms, in proportion to the greater harshness or unreasonableness of the substantive terms themselves.' " Id. (quoting 15 Williston on Contracts § 1763A, pp. 226–27 (3d ed. 1972)). "In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." Id.

"The ordinary principles of unconscionability may manifest themselves in forms peculiar to the arbitration context. One such form is an agreement requiring arbitration only for the claims of the weaker party but a choice of forums for the claims of the stronger party." Armendariz, 24 Cal. 4th at 119.

"[A]n arbitration agreement imposed in an adhesive context lacks basic fairness and mutuality if it requires one contracting party, but not the other, to arbitrate all claims arising out of the same transaction or occurrence or series of transactions or occurrences." Armendariz, 24 Cal. 4th at 120. "[I]f an employer does have reasonable justification for the arrangement[—]i.e., a justification grounded in something other than the employer's desire to maximize its advantage based on the perceived superiority of the judicial forum[—][a unilateral arbitration agreement] would not be unconscionable." Id. "Without such justification, we must assume that it is." Id.

The arbitration clause Defendants seek to enforce is as follows:

> **Any disputes arising under or in connection with your employment shall, *at the election of the Company*, be resolved by binding arbitration; to be held in New York City, New York, in accordance with the rules and procedures of the American Arbitration Association. Judgement upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.**

(*Defs.' Mot.* [Doc. 35-1] 5:7–14 (emphasis added) (quoting *Employment Agreement* [Doc. 23-1, Exh. 2] 4.)

//
//
//
//
//
//
//
//
//
//

6

16-CV-1728 W (JMA)

### 1. Substantive Unconscionability

The substantive unconscionability of this clause is clear. Armendariz is directly on point.[4][5] See 24 Cal. 4th at 119–20. The agreement is one-sided. It allows only the employer to elect to arbitrate—or, alternatively, to use the judicial system at will. Thus does the employer maximize the perceived benefit of arbitration, while maintaining the option of going to court whenever it pleases. The employee, on the other hand, must adhere to the employer's choices—relegated to whatever forum the employer considers to be most strategically favorable. See id. This is unconscionable—at least in the

---

[4] Defendants maintain—in a footnote—that "[b]ecause the instant dispute does not involve a fundamental public policy tied to a constitutional or statutory provision, the requirements articulated in [Armendariz] pertaining to substantive unconscionability are inapplicable." (*Defs.' Mot.* [Doc. 35-1] 12:11 n.1.) They do not articulate to what requirements they are referring. (*Id.*)

This assessment of the law is unsound. Defendants bring two California appellate court cases to the Court's attention—Giuliano v. Inland Empire Personnel, 149 Cal. App. 4th 1276, 1288–91 (2007), and Parker v. McCaw, 125 Cal. App. 4th 1494, 1507–08 (2005). Giuliano engages solely with the portion of Armendariz that dealt with the issue of whether statutory rights pursuant to FEHA could be arbitrated at all. See 149 Cal. App. 4th at 1288–91; Armendariz, 24 Cal. 4th at 99–101. It does not concern unconscionability. Parker contains one brief paragraph mentioning Armendariz, distinguishing its "unconscionability rules" on the basis that the plaintiff was an attorney who earned $700,000/year and either negotiated or had the opportunity to negotiate the relevant arbitration clause—which was not unilateral. See 125 Cal. App. 4th at 1500–08.

None of this suggests that the California Supreme Court's treatment of unilateral arbitration clauses in Armendariz is limited to the context in which it arose. Its language is not so limited, see 24 Cal. 4th at 119–21, and the California Supreme Court has applied the relevant principles in at least one further context in recent years. See Pinnacle Museum Tower Ass'n, 55 Cal. 4th at 248–49 (declining to interpret as unilateral a clause that required arbitration only of specific subject matter; "In the same part of Armendariz, we made clear that arbitration clauses may be limited to a specific subject or subjects and that such clauses are not required to 'mandate the arbitration of all claims between [the parties] in order to avoid invalidation on grounds of unconscionability.' ") (quoting Armendariz, 24 Cal. 4th at 120). If the unconscionability rules of Armendariz were limited to contexts involving constitutional or statutory provisions, as Defendants intimate, this analysis would be needless.

[5] The Armendariz Court's requirement of basic fairness and a modicum of bilaterality in the formation of an agreement to arbitrate is the application of a general principle of contract law to this setting. It is not a "state-law rule[] that stand[s] as an obstacle to the FAA's objectives[.]" See Concepcion, 563 U.S. at 343. Defendants do not argue otherwise. (*Defs.' Mot.* [Doc. 35-1]; *Defs.' Reply* [Doc. 44].)

7

absence of justification apart from strategic calculus.  See id. at 119–21.  As Plaintiff points out in opposition (*Pl.'s Opp'n* [Doc. 38] 12:12 n.3), Defendants identify no such justification.

### 2. Procedural Unconscionability

As to procedural unconscionability, Defendants' motion paints an incomplete picture.  (*Defs.' Mot.* [Doc. 35-1] 9:12–12:3.)

Defendants contend, "[t]here is not a scintilla of procedural unconscionability in the execution of the instant Employment Agreement . . . ."  (*Defs.' Mot.* [Doc. 35-1] 10:3–4.)  They submit that "[p]arties possessed equal bargaining power throughout these negotiations, evinced in part by the fact that Plaintiff was able to negotiate a generous compensation package, which included a $175,000 base salary, a $150,000 signing bonus, and 100% annual commissions on the first $500,000 in deals that he originated each year.  (*Id.* [Doc. 35-1] 10:8–12 (citations omitted).)  As further evidence of Plaintiff's bargaining power, they contend that "[a]t Plaintiff's request, Defendants also agreed to lend him the $750,000 he originally requested as a signing bonus, which he seeks to avoid repaying now, long after his attempt to negotiate a more generous loan forgiveness provision failed."  (*Id.* [Doc. 35-1] 10:13–17 (citations omitted).)  This is misleading.

There were, in fact, two sets of negotiations that took place as to Plaintiff's position with Defendants.  The first—during which Plaintiff negotiated his generous compensation package—took place while Plaintiff was still working with his prior employer.  It was only after Plaintiff resigned his position to begin working with Defendants that they presented him with the unilateral arbitration clause and told him that it was a non-negotiable condition of his upcoming employment.

This first round of negotiations took place while Plaintiff still worked for Noble Americas Corporation—beginning in April or May of 2013 and continuing through June of 2013, the month his prior employment ended.  (*Pl.'s Opp'n* [Doc. 38] 1:14–2:22;

8

*Defs.' Exhs. A–B* [Docs. 35-3–35-4].) During these negotiations, Plaintiff and representatives of Defendants discussed compensation and the loan that forms the subject matter of this case. (*Defs.' Exhs. A–B* [Docs. 35-3–35-4].) Defendants' final offer was reflected in two emails from Plaintiff's future supervisor to Plaintiff, sent on June 14, 2013 and June 17, 2013. (*Pl.'s Opp'n* [Doc. 38] 2:11–16; *Pl.'s Exhs. 2–3* [Doc. 38-1].) Critically, Defendants' June 14 email stated that they would "have to involve a lawyer to draft the exact language . . . ." (*Pl.'s Exh. 2* [Doc. 38-1].) Plaintiff then left his existing job (*Travis Decl.* [Doc. 38-1] ¶ 10; *see Pl.'s Exh. 4* [Doc. 38-1] (seeming to indicate that July 21, 2013 was Plaintiff's last day at Noble Americas))—without seeing what this "exact language" would be.

Contrary to defense counsel's representation that both parties had equal bargaining power upon the negotiation of the agreement to arbitrate (*Defs.' Mot.* [Doc. 35-1] 10:8–9), Plaintiff was effectively unemployed when he first received the draft copy of that agreement on July 9, 2013. (*Travis Decl.* [Doc. 38-1] ¶ 10; *Pl.'s Exh. 4* [Doc. 38-1].)

Plaintiff then engaged in a second round of negotiations with his future supervisor at BTG. (*Travis Decl.* [Doc. 38-1] ¶¶ 11–16.) She indicated to him that the arbitration clause was among "standard provisions in all employment contracts that BTG would not waive or change."[6] (*Id.* [Doc. 38-1] ¶ 12.) A representative of Defendants' human resources division later confirmed that the clause was non-negotiable, telling him that every term appearing in the Employment Agreement other than the compensation and loan terms "were standard in every BTG employment agreement and could not be changed." (*Id.* [Doc. 38-1] ¶ 17.) Plaintiff declares that, "[s]he made it clear that if I wanted to work for BTG, I had to accept these terms." (*Id.*)

---

[6] In their reply brief, Defendants contend that Plaintiff "did not propose changes to the [arbitration clause] because he *assumed* it was non-negotiable[,]" (*Defs.' Reply* [Doc. 44] 3:10–11 (citing *Travis Decl.* [Doc. 38-1] ¶¶ 12–13.) On the contrary, Plaintiff declares that Ms. Roy and Ms. Acosta both affirmatively represented to him that the clause was among non-negotiable terms. (*Travis Decl.* [Doc. 44] ¶¶ 12, 17.) Defendants provide no contradictory evidence.

9

Plaintiff requested 41 changes to the Employment and Loan Agreements. Defendants approved only three of these—and only in part. (*Travis Decl.* [Doc. 38-1] ¶ 21; *Pl.'s Exh. 9* [Doc. 38-1]; *Employment Agreement* [Doc. 23-1, Exh. 2]; *Loan Agreement* [Doc. 23-1, Exh. 2].) The first had to do with a later start date. The second had to do with modified loan forgiveness conditions (reflecting the conditions appearing in the final contract instead of one that would have offered him forgiveness if he were terminated without "good cause"). And the third had to do with Plaintiff's job title— "Senior Strategist and Originator-Energy" rather than "Managing Director, Head of Business Development for North American Energy." (*Id.*) Other rejected changes included vacation days and the length of the nonsolicitation provision, which remained roughly twice as long as he had requested. (*Id.*)

Plaintiff's uncontroverted evidence indicates that Defendants took advantage of his adverse employment situation to force a substantively unconscionable contract term. Plaintiff establishes procedural unconscionability.

### B. The Taint of Unconscionability Permeates the Arbitration Agreement.

Defendants argue in the alternative that the Court should enforce the arbitration provision notwithstanding its unconscionability—that it should sever the unilateral clause, striking the phrase "at the election of the Company" and reforming the contract to be bilateral *ex post*. (*See Defs.' Mot.* [Doc. 35-1] 13:24–15:26.)

As quoted above:

//
//
//
//
//
//
//

> **(a) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.**
>
> **(b) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose, and effect to aid the court in making the determination.**

Cal. Civ. Code § 1670.5. The decision as to whether to sever an unconscionable clause or to refuse to enforce the contract as a whole is a matter reserved to the Court's discretion. See Armendariz, 24 Cal. 4th at 121–22. The Court should exercise its discretion depending on whether the contract as a whole is permeated by unconscionability. Id. Whether the contract is permeated by unconscionability is determined by reference to the same standard by which a Court decides whether or how to enforce a contract that has an unlawful term within it. See id. at 124. As the Court explained:

> **Courts are to look to the various purposes of the contract. If the central purpose of the contract is tainted with illegality, then the contract as a while cannot be enforced. If the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of severance or restriction, then such severance and restriction are appropriate.**

Id. at 124.

Furthermore:

> **[California] Civil Code section 1598 states that "[w]here a contract has but a single object, and such object is unlawful, whether in whole or in part, or wholly impossible of performance, or so vaguely expressed as to be wholly unascertainable, the entire contract is void."**

24 Cal. 4th at 122. By contrast:

> **Section 1599 states that "[w]here a contract has several distinct objects, of which one at least is unlawful, in whole or in part, the contract is void as to the latter and valid as to the rest."**

Id. " 'Whether a contract is entire or separable depends upon its language and subject matter, and this question is one of construction to be determined by the court according to the intention of the parties.' " Id. (quoting Keene v. Harling, 61

11

16-CV-1728 W (JMA)

Cal. 2d 318, 320–21 (1964)). If the good cannot be separated from the bad, " 'or[,] rather[,] the bad enters into and permeates the whole contract, so that none of it can be said to be good, and therefore the subject of an action[,]' " the unconscionable contract term should not be severed. See id. at 123 (quoting Santa Clara Val. M. & L. Co. v. Hayes, 76 Cal. 387, 393 (1888)).

Defendants point out that the Armendariz Court began its analysis by focusing on two points, neither of which are present here. (*Defs.' Mot.* [Doc. 35-1] 14:22–15:26.) See 247 Cal. 4th at 124–25. First, in Armendariz, there existed more than one unconscionable clause in the contract at issue. Here, there is only the one. See id. at 124. Second, it would not have been possible for the Armendariz Court to strike any single provision "to remove the unconscionable taint from the agreement." Id. at 124–25. Here, by contrast, removing the phrase "at the election of the Company" would render the clause bilateral, rewriting the contract to remove the substantive unconscionability after the fact.

Defendants overlook the Armendariz Court's application of its fundamental standard—its analogy to severance in the context of contracts with unlawful terms—to a unilateral agreement to arbitrate. The Court explained, "[w]hether an employer is willing, now that the employment relationship has ended, to allow the arbitration provision to be mutually applicable, or to encompass the full range of remedies, does not change the fact that the arbitration agreement as written is unconscionable and contrary to public policy." 24 Cal. 4th at 125. It continued, "[s]uch a willingness 'can be seen, at most, as an offer to modify the contract; an offer that was never accepted. No existing rule of contract law permits a party to

12

16-CV-1728 W (JMA)

resuscitate a legally defective contract merely by offering to change it.'" Id. (quoting Stirlen v. Supercuts, 51 Cal. App. 4th 1519, 1535–36 (1997)).[7]

The sole object of this clause was to allow Defendants—and only Defendants—to compel Plaintiff to arbitrate any dispute in connection with his employment whenever they pleased. Under the circumstances, this was an unconscionable arrangement. See Armendariz, 24 Cal. 4th at 121–25. The Court may not rewrite the contract to Plaintiff's detriment *ex post*.[8]

## IV.  CONCLUSION & ORDER

Defendants' motion to compel arbitration is **DENIED**.

**IT IS SO ORDERED.**

Dated:  December 20, 2017

_____
Hon. Thomas J. Whelan
United States District Judge

---

[7] The Armendariz Court's use of the word "[m]oreover" in introducing this reasoning indicates that it is an independently sufficient reason for its decision not to sever the unconscionable unilateral arbitration clause. See 24 Cal. 4th at 125.

[8] Defendants make one final argument that bears a brief mention.

They contend that even if the Court declines to compel Plaintiff's claims to arbitration, it should compel Defendants' counterclaim to arbitration because "a binding and enforceable arbitration agreement exists between the parties." (*Defs.' Mot.* [Doc. 35-1] 17:10–28.) This alternative argument assumes the truth of the main argument's conclusion. Because the arbitration clause is unenforceable, there is no more basis for partial enforcement than for full enforcement.